Next we'll hear our argument in Duquenois v. American University of Beirut. Mr. Allison. Good morning, Your Honors, and may it please the Court, this is Theodore Allison on behalf of Appellant Paul Duquenois. If Paul Duquenois is required to bring this action in Lebanon, his Title VII rights will be lost. The Supreme Court has made clear over 35 years, first, that the strictures of Title VII are absolute, and second, that contract remedies are insufficient to protect these important statutory rights. This Court, in Eisenberg v. Advanced Relocation Services, has adopted that formulation. The strictures are absolute. In 14 Penn Plaza, which the appellees relied on to suggest that the case Gardner-Denver was somehow no longer relevant, the Court approved its central holding in Gardner-Denver, and it's a clear, it has clear relevance to this case, because in the Supreme Court's Title VII arbitration line of cases, the fact that an employee could have a claim for breach of contract, for breach of a collective bargaining agreement, for breach of an employment contract, was uniformly deemed insufficient to protect. Ten years after Gardner-Denver, the Supreme Court in Mitsubishi Motors v. Solar Chrysler Plymouth described the interaction between a form selection clause and a choice of law clause and said that if those clauses operated in tandem to deprive a U.S. person of important statutory rights, quote, we would have little hesitation in condemning the agreement. This Court, in Red Bull, upheld the refusal of a district judge to send a case to Arizona, not Beirut, but Arizona, because it was unlikely that the plaintiff would pursue the case were it And finally, even in Martinez, in which appellees place a great deal of emphasis, this Court said that it presented a close case. And Martinez, as the Court will recall, involved an employee who was subject to the form selection clause specifying the United Kingdom. He had bought a house in the United Kingdom, he had applied for citizenship there, and he had even filed a lawsuit there. So that was this Court's idea of a close case. There is no question, based on this record, that this case, if transferred or if dismissed in favor of a Beirut court, would become a breach of contract case. The appellees have said so no fewer than six times in the record. And this Court, in ABC Nederland, made very clear that if a contract doesn't specify that certain law is to apply, we have no confidence whatsoever. In fact, the Court said it's highly unlikely that a court in the Netherlands would apply the Securities Exchange Act. There's just no reason to expect that a court would do that. On top of that, of course, our expert has established that Lebanon has no civil rights laws that are comparable in any way to Title VII. If this case were to be litigated in Lebanon, it would be a breach of contract case, and the remedies would be severely circumscribed. In fact, the contract, which can be found in the record at page 102-104, the contract circumscribes the remedies to Professor Duquenois even more than the general contract expectancy damages that we're all familiar with. In contrast, Title VII provides robust remedies, including reinstatement by injunction, the primary remedy under Title VII, and a full tort measure of damages, a tort law to make the plaintiff whole and to compensate for all injuries suffered, including emotional distress and even punitive damages in an appropriate case. So the remedies provided by a Lebanese court would, in the words of earlier cases of the Second Circuit, would be so inadequate as to constitute no remedy at all. One of the things that makes that clear is the burden and expense that Professor Duquenois would incur were he required to litigate in Beirut now that he has been turned out of his job, lost his residency status, lost his residence, and can participate in transactions in Lebanon only as a tourist. It is also impossible to predict, if we again look at the teaching contract, that Professor Duquenois could even establish a breach of that contract because it provides that he can be terminated without further remedy, simply by violating any policy of the American University of Beirut. Beyond that, while Title VII would entitle the professor to have his job, to have a renewal of his appointment as a professor if it were found that he was removed and non-renewed for discriminatory reasons, the contract, which the Lebanese courts would enforce,  there are no remedies whatsoever if you do not renew your appointment after the expiration of the term of this contract. There are other important statutory rights under Title VII besides simply the remedies. One is the ability to establish liability where discrimination is a motivating factor. Therefore, if this case proceeded in Beirut under a breach of contract theory, Professor Duquenois would not have that important right that is expressly provided in the statute. Reprisal under Section 2000E5 is also an important statutory right that Professor Duquenois, again, would lose were he required to litigate in Lebanon. In all cases cited by appellees in which a foreign tribunal was deemed adequate, the foreign country had some form of civil rights laws, for example, in Martinez, or at least a remedy sounding in tort, for example, a fraud claim as a substitute for a RICO claim or a breach of fiduciary duty claim in the Roby case as a substitute for securities claims in this country. But here, the sole remedy in Lebanon is a breach of contract claim, which has never been found to be adequate to vindicate important statutory rights. Between Lebanon and the U.S. Thank you, Mr. Allison. You've reserved a few minutes for rebuttal. We'll hear next from Ms. Williams. Thank you. Good morning, and may it please the Court. This is Catherine Williams on behalf of the appellees, American University of Beirut, Fadlo Khoury, and Trudy Hodges. Defendant Pelley respectfully requests that the Court affirm the District Court's dismissal of the complaint on the ground that the Form Selection Clause in Duquenois' employment contract is enforceable and requires him to litigate this dispute in Lebanon where he was employed by AUB and where all of the events at issue took place. And Ms. Hodges also respectfully requests that the Court affirm the dismissal of the claims against her for lack of personal jurisdiction. Duquenois does not dispute that the Form Selection Clause in his employment contract is mandatory and therefore presumptively valid and enforceable. The only issue is whether the District Court correctly held that he failed to meet his heavy burden of showing that the employment contract would be unreasonable or unjust. The District Court properly rejected his arguments and concluded that it was enforceable. I have one question, Ms. Williams. This is Judge Lynch. Before we go further, whether or not the District Court was right or wrong in that conclusion, that's a conclusion of law, right, that we would review de novo, whether the, even if the general form non-convenience standard is reviewed as a matter of discretion, a legal error would constitute an abuse of discretion. So, I mean, are we in agreement or disagreement as to whether the enforceability of the Form Selection Clause is reviewed de novo? We are in agreement, Your Honor, that even under the abuse of discretion, to the extent the District Court's decision turned on a question of law, it would be reviewed de novo. Okay. So, the District Court, I think that Mr. Allison was correct to focus on Martinez and the District Court correctly identified that as the governing and most relevant precedent here. Under this Court's decision in Martinez, it considered exactly the public policy considerations that Mr. Allison alludes to in the context of civil rights protected by federal statute. Ms. Williams, excuse me. In in Martinez, we were talking about the United Kingdom, and as I read the opinion, it seemed that it was not disputed that the United Kingdom specifically prohibited discrimination in at that time in that Mr. Martinez had a right that he now has under Title VII, but did not have under prevailing views then against discrimination on the basis of sexual orientation. Is that not right? It's correct, Your Honor, that the Court found that the law in the UK was in some ways broader. It was also in some ways narrower. The Court noted that it was a comparable protection, though. They have discrimination laws, and he could make the claim that he was being discriminated against on a prohibited basis, and if he established that, he would win. That's right, Your Honor, but this Court has been very clear in its precedent that the question is not, in fact, whether there is a precisely equivalent statute in the foreign jurisdiction. Now, you know, the Court in Martinez said the question it was interested in was whether the law in the chosen forum would be insufficient to deter the conduct that the U.S. statutory scheme in question is intended to prevent, and in the Roby case, which dealt with securities fraud and important public policy consideration of the protection of investors, this Court expressly said that it would defy reason to suggest that a plaintiff may circumvent form selection clauses merely by stating claims under laws not recognized by the forum selected in the agreement, and that form selection clauses could be enforceable even if they pass at least. The District Court found on the basis of Professor Diab's affidavit that Lebanese law does provide alternative means for relief, redressing employment discrimination, but what are those alternative means? Do we have to find them effective? I believe it's the plaintiff's burden to show that they are ineffective. There is no dispute that under Lebanon's contract law and code of civil procedure, the Court may provide a remedy in the case of a failure to equitably perform a contract or a breach of employment contract, including for reasons of sex discrimination. That is not in dispute. The District Court was correct, you know, did not err in reaching that decision on the basis of another court in the Southern District had reached the same conclusion in the Iskander case. It sounds as though under Lebanese law, an act of discrimination in employment is treated as a breach of the employer's duty to an employee as a matter of contract. That is correct, Your Honor. It's a question of, you know, whether there was a wrongful or abusive act under the contract. Well, is it the opinion of the expert that treating a man differently than a woman in connection with a disciplinary process would be cognizable as a breach of contract? He did not offer an opinion that specific, Your Honor. Isn't that the relevant issue? Excuse me, I'm just trying to understand. Mr., at least under American law, and of course, Lebanese law could be entirely different. A university employee, a professor would be entitled as a matter of contract to be treated according to whatever procedures the university had in a disciplinary proceeding. You'd refer to the handbooks as being incorporated by reference into a contract, and that would be the contract rule. But at least under American law, I suppose if the university had adopted some discriminatory procedure that said that we'll always give abuse by a male faculty member, that's all you'd be entitled to as a matter of contract law, because that's what the terms of employment were. You see what I'm saying? The discrimination claim would be separate and additional to any breach of contract claim. So I'm just trying to figure out what this breach of contract claim would look like under Lebanese law, and whether it would include some kind of implied obligation on the part of an employer to treat the sexes equally. Yes, Your Honor. I believe Professor Diab does address that in paragraph 10 of his declaration, which starts at page 146 in the Joint Appendix. He does not opine simply that a court would narrowly enforce the terms of a contract. Rather, he explains that Lebanon's Code of Obligations and Contracts requires that they be executed in good faith, and that accordingly, under that broad principle, a professor may sue a university where he works if non-performance is not justified, including because the non-performance was motivated by discrimination on the basis of sex, which is what Professor Diab is alleging here. I mean, the thing that I have trouble with, and this is, of course, always a difficulty in applying foreign law, especially in a civil law system, which I gather Lebanon is, where you can't make reference to judicial decisions as binding precedents to establish the law. Of course, he could say that. He could say that, look, the civil code says you have to act in good faith, and treating men differently than women are treated would not be good faith. But would he win? In other words, it's one thing to say he can bring a claim of sex discrimination, and if he establishes the facts, he would win because there's a principle of the law of the to say that you could argue that discrimination is illegal under Lebanese law. But maybe the court would say, no, it isn't. Maybe the court would say, even if you establish those facts, we don't treat that as a breach of good faith. And it's not clear to me that the opinion is clear on the question that, you know, a violation of this provision, and he would have a cause of action such that if he established that as a matter of fact, he would win at Lebanese law. Your Honor, I think the declaration is clear that sex discrimination is a ground for finding that a contract has not been executed in good faith. You know, whether he would ultimately win on the merits, I think, is not the issue under Martinez or Roby. The issue is whether the law the foreign jurisdiction actually addresses and provides a remedy in theory for the type of conduct, you know, in order to deter the type of conduct of the US statutory scheme is intended to protect against. And that's what Professor Diab has established here in Lebanon that's protected through the these general principles of contract law, and also through the general provision of the Code of Civil Procedure. You know, that permits a case to be decided in equity and general principles, even if there's no specific statute governing the issue. Thank you, counsel. Mr. Allison, you have two minutes of rebuttal. Thank you, Your Honor. And yes, there are just a couple of points, although the court's questions, I think, were very illuminating. Let me start with the last point. And that is that, first, Professor Diab made clear that sex discrimination is not unlawful in Lebanon, and therefore, to say that a contract was breached based on wrongful conduct or abusive conduct or something unlawful, which she has also said, could never encompass sex discrimination. But there are other subsidiary points. The first is, how could we possibly know and trust that Lebanese law would condemn reverse sex discrimination? We traditionally thought of it as discrimination against women. Then it could be against men. And now we understand that it includes sexual orientation in this country, anyway. And that's not an issue here. The second is, what if the university simply said, we have a benevolent affirmative action policy? The President Khoury, the president of the university, at one point said that he fully embraced the superiority of women. This is one of the allegations in the complaint, well-documented. So the fact that they are trying to advance the rights of women, laudable though it may be, would not pass muster under U.S. law. We cited the Fisher case in our How could we know that a Lebanese court would say it was bad faith to terminate based on sex discrimination if they also gave seven other compelling pretextual reasons for the termination? So that is, with all due respect, that is cold comfort for Professor Dukan Law in this case. I think it is also important that not all of the events of this case took place in Lebanon. Not only was Professor Dukan Law invited after he had been turned out of his position, suspended anyway, and left Lebanon, he was invited to AUB's New York headquarters to review materials in relation to the investigation that is an issue. And also he establishes clearly that he did work in New York on several occasions that was directly related to his employment by AUB. So, yeah, I think it is a misstatement to say that everything in this case happened in Lebanon. And finally, I think I will echo the Red Bull case, and I will it is unlikely to almost impossible that Professor Dukan Law would elect to pursue the breach of contract remedy that has been presented to him in the courts of Lebanon were he to be turned out of U.S. courts. I thank you for your time. Mr. Allison, just one last question. You haven't mentioned Ms. Hodges at all. Can I take that to mean that you don't really need to pursue a mid-level administrator at the university for personal liability in this matter if you were to succeed in having this case undismissed and allowed to proceed in New York, that you don't really much care whether Ms. Hodges is in or not? Your Honor, it's true that after Ms. Hodges' case, her involvement became far less significant, except as a witness. We do believe that she has contacts plus in New York, having been on the board of a New York organization in addition to AUB, and she had oversight over AUB activities in New York in her official role. But, no, her seeking damages against Ms. Hodges at this point, I think, would be duplicative of the damages we'd be seeking against AUB. Okay. Thank you, counsel. Thank you, Your Honor. Thank you. We'll put the case under advisement.